**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
United States Courthouse
402 East State Street, Room 255
Trenton, New Jersey  08608

**Hon. Christine M. Gravelle**                                                                           609-858-9370
United States Bankruptcy Judge                                                                   Fax  609-989-0431

# LETTER DECISION

September 30, 2016

**Sent via ECF & Email**
Brian W. Hofmeister, Esq.
Law Firm of Brian W. Hofmeister
691 State Highway 33
Trenton, NJ 08619
*Attorney for Chapter 7 Trustee*

Rodman E. Honecker, Esq.
Windels Marx Lane & Mittendorf, LLP
120 Albany Street Plaza, 6th Floor
New Brunswick, NJ 08901
*Attorneys for Harborcove Financial, LLC*

Bruce J. Wisotsky, Esq.
Norris, McLaughlin & Marcus, PA
721 Route 202-206, Suite 200
Bridgewater, New Jersey 08807\
*Attorneys for Debtor*

>     Re:    **In re Packaging Systems, LLC**
>            **Chapter 7 -- Case No. 12-18864**
>            **Objection to Trustee's Final Report of No Distribution and**
>            **Motion for Allowance and Payment of Priority Claim**

Dear Litigants:

I.    Introduction

    Packaging Systems, LLC ("Debtor") entered into a factoring and security agreement with Haborcove Financial, LLC ("Harborcove"), which provided for the sale of Debtor's accounts receivable to Haborcove.  Debtor then filed for protection under Chapter 11 of the Code and obtained an order authorizing it to assume the prepetition factoring agreements with Harborcove (the "Order").  The Order also granted Harborcove a Chapter 11 super-priority administrative expense claim under §364(c)(1) of the Code.  Subsequently, Debtor's case was converted to

Chapter 7 and a Chapter 7 trustee appointed (the "Trustee").  Through the Trustee's efforts, the estate was able to recover significant funds through preferential and fraudulent transfer proceedings.  The final report filed by the Trustee provided that post-conversion Chapter 7 administrative expenses would take priority over Harborcove's 364(c)(1) claim.  Harborcove now objects to this proposed distribution, arguing its pre-conversion super-priority 364(c)(1) claim should subordinate all post-conversion Chapter 7 administrative expenses.   Along with the objection to the final report, Harborcove also filed a Motion for Allowance and Payment of Priority Claim.   The motion and the objection to the final report are substantially identical, and will be jointly addressed herein.

The Court grants the Motion for Allowance and Payment of Priority Claim with conditions and sustains the Harborcove objection to the Trustee's Final Report.

II.     Jurisdiction and Venue

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

III.    Relevant Facts

Debtor provided packaging, display, filling, warehousing, and distribution services to customers in the food, pharmaceutical, cosmetic, personal care, and household product sectors.  On December 9, 2010, Debtor and Haborcove entered into a Factoring and Security Agreement, which provided for the sale of Debtor's accounts receivable to Haborcove, purchase of the Debtor's factor accounts by Haborcove, and advances or extensions of credit to the Debtor by Haborcove.  Debtor and Harborcove later modified their agreement to give Harborcove a duly perfected, valid, and non-avoidable first priority security interest in and lien upon all of Debtor's assets.

On April 3, 2012, Debtor filed a voluntary petition under Chapter 11 of the Code.  Norris, McLaughlin & Marcus, PA ("NMM") represented Debtor.  Along with other First Day Matters in the Chapter 11, Debtor filed a "Motion to Assume Pre-Petition Factoring Agreement with Harborcove Financial, LLC pursuant to Section 365 of the Bankruptcy Code and Grant Super-Priority Administrative Claim Pursuant to Section 364(c)(1) of the Bankruptcy Code."  While the docket reflects that the motion to assume the pre-petition factoring agreement was denied without prejudice, an interim order was entered which approved a post-petition factoring agreement.  Thereafter, the Court entered a final order on May 17, 2012 ("Final Order"), which authorized Debtor to assume the secured prepetition factoring agreements with Harborcove subject to certain amendments, and also granted Harborcove a Chapter 11 super-priority administrative claim under § 364(c)(1) of the Code.

Relevant to the present matter are two provisions of the Final Order. The first, located at paragraph 4 of the Final Order, provides Harborcove a first priority security interest in all assets of the estate *except for* recoveries from Chapter 5 claims, and states:

> In accordance with Sections 364(c) and (d) of the Bankruptcy Code, Harborcove is hereby granted, and all loans, advances, obligation and amounts due or hereafter becoming due and owing by the Debtor to Harborcove are hereby secured by, valid and perfected first and senior security interests and liens in favor of Harborcove in and on all existing and after acquired assets of the Debtor and the Debtor's estate, and the proceeds thereof, wherever located, excluding recoveries from actions brought pursuant to the provisions of Chapter 5 of the Bankruptcy Code.

The second relevant provision is located at paragraph 7 of the Final Order and, in addition to the grant conveyed by paragraph 4, allows Harborcove a super-priority claim under § 364(c)(1), stating:

> Harborcove is hereby granted a super-priority administrative claim under Section 364(c)(1) of the Bankruptcy Code over any and all administrative expenses incurred and priority claims arising in this case for the obligations of the Debtor to Harborcove under the Pre-Petition Factoring Agreement, as amended by the Amendment, and Post-Petition Factoring Agreement, including all pre-petition and post-petition debt existing at the time of the Debtor's assumption of the Pre-Petition Factoring Agreement . . .

Paragraph 7 of the Final Order further provided that Harborcove's super-priority 364(c)(1) claim would be subject to two carve-outs:

1. The quarterly fees required to be paid to the U.S. Trustee; and
2. The fees and expenses incurred by counsel for the Debtor as approved by the Court, up to the sum of $25,000.

A year after entry of the Final Order, the Court entered an order converting the case to Chapter 7 on motion by the United States Trustee. Neither Harborcove nor the Debtor filed opposition to the motion to convert. While the Chapter 7 proceeding was pending, the Trustee commenced six separate adversary proceedings to recover preferential and fraudulent transfers pursuant to Chapter 5 of the Code. On October 15, 2013, the Trustee filed a Notice of Assets on the court docket. The notice fixed the last day for filing a proof of claim at January 13, 2014.

Less than a month before the Trustee filed the Notice of Assets, Harborcove filed proof of claim 33-1. The next day, Harborcove filed amended proof of claim 33-2 ("Proof of Claim"). The Proof of Claim stated a claim in the amount of $182,826.83, which was secured against "virtually all assets, including equipment and unsold accounts receivable" and perfected by a UCC Article 9 filing. The Proof of Claim also claimed priority status for the entire amount pursuant to 11 U.S.C. § 507(a)(2).

Harborcove utilized official bankruptcy form B 10[1] for its Proof of Claim. Form B 10 contains a note which states, "Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503." Attached to the Proof of Claim was a narrative which was entitled "Request for Payment of Administrative Expense attached to Proof of Claim and Security Interest." Within the narrative, Harborcove noted that the Final Order "grant[ed] to Harborcove a super-priority administrative claim for unsecured post-petition debt, including assumed debt, pursuant to 11 U.S.C. § 364(c)(1). The narrative also contained assertions that "pursuant to the Final Order, [Harborcove] is entitled to immediate payment of the Claim Amount, which constitutes an administrative expense entitled to priority under Code § 507(a)(2)," and, "as an alternative to the Chapter 7 Trustee's turn-over or payment from the proceeds of its Collateral, Harborcove requests immediate payment of the Claim Amount as an administrative expense pursuant to the Final Order."

Throughout the course of the Chapter 7 bankruptcy, Harborcove did not take any other action in regards to its request for payment of its administrative claim. On February 4, 2014 Harborcove entered into a consent order with the Trustee that vacated the automatic stay as to the machinery and equipment of the Debtor.

Ultimately, as a result of litigating the six adversary proceedings, the Trustee was able to recover $92,395.99 in gross receipts. On May 20, 2016, three years after beginning his administration of the estate, the Trustee filed a Final Report, which disclosed a balance of $89,341.53 remaining in the estate after certain administrative expenses and bank service fees were paid. The Trustee's proposed distribution plan did not provide for any distribution to Harborcove for its 364(c)(1) super-priority administrative expense claim. Instead, the Final Report listed Harborcove as a secured creditor with an asserted claim of $182,826.83, an allowed amount of claim of $0.00, and a proposed payment of $0.00.

The Final Report provided that the remaining $86,841.53, after making a $2,500 payment to the Internal Revenue Service on its secured claim, would be paid to Chapter 7 administrative expenses. Because those expenses far exceeded the funds remaining in the estate, the Final Report proposed payment of the Chapter 7 administrative expenses at a *pro rata* rate of approximately 50.6%. The Final Report also included applications for fees and administrative expenses incurred during the course of the Chapter 11, including NMM's fees and expenses but did not include distribution for those claims.

Harborcove now objects to the Final Report, citing that its 364(c)(1) pre-conversion super-priority claim should take precedence over all post-conversion Chapter 7 administrative expenses. NMM joined Harborcove's objection to the Final Report, and additionally requested that the firm's remaining carve-out of $15,000 be distributed to it prior to Harborcove or any other administrative claimant receiving a distribution. In addition, Harborcove filed a Motion for Allowance and Payment of Priority Claim. The parties appeared for oral argument on the objection to the Final Report. Due to the duplicative nature of that objection and the Motion for Allowance and Payment of Priority Claim, no oral argument was necessary on the return date of the motion.

---

[1] Form B 10 was superseded by Form B 410 on December 1, 2015.

IV.    Discussion

At issue is whether 11 U.S.C. § 364(c)(1) or 11 U.S.C. § 726(b) controls the payment of a super-priority claim upon conversion from Chapter 11 to Chapter 7. As is often the case in the Code, the provisions do not directly address one another, leading to tension when interpreting the two.

The Code allows shifts in the natural order of priority of claims, providing for payment of junior claims before senior claims, in a number of ways. For example, "super-priority status" may be granted under § 507(b), to secured creditors for whom court-ordered adequate protection proves to be inadequate. In that case, the creditor is entitled to a super-priority for the amount of the deficiency, i.e., the amount by which the creditor has been damaged by the continuation of the stay, the use of its collateral, or the like. Super-priority treatment under §§ 364(c)(1) and (d) is available to induce creditors to lend post-petition operating funds to the debtor. *See* In re Energy Coop., 55 B.R. 957, 963, n. 20 (Bankr. N.D.Ill. 1985). In addition, § 726(b) gives precedence to Chapter 7 expenses of administration over Chapter 11 expenses of administration following conversion from the latter to the former. The Chapter 7 expenses of administration in such a case are occasionally referred to as having super-priority status. *See* id., *citing*, In re Codesco, Inc., 18 B.R. 225, 227 (Bankr. S.D.N.Y. 1982). Finally, § 506(c) addresses priority status: the super-priority obtained pursuant to § 364(c)(1) and (d) will prime a super-priority obtained pursuant to § 507(b); while, in turn, a super-priority obtained pursuant to § 507(b) will prime superseding Chapter 7 administrative expenses entitled to priority under § 726(b). *See* id., *citing,* 2 Collier's on Bankruptcy, para. 361.01 (15th Ed.).

Section 364(c) of the Code allows for a trustee or debtor in possession to obtain credit on behalf of the estate and provides, in part, that:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expenses, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt-
>
> (1) With priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title.

Section 726 of the Code provides for distribution of property of the Chapter 7 estate. It addresses the payment of claims upon conversion, stating in pertinent part:

> In a case that has been converted to this Chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this Chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other Chapter of this title…

The plain text of §726(b) is silent regarding the priority of a 364(c)(1) claim granted in a case that is subsequently converted to another Chapter. Section 726(b) states only that post-conversion 503(b) administrative expenses claims supersede pre-conversion administrative expenses. On the other hand, the text of § 364(c) specifically states that priority granted pursuant to that section supersedes "any or all administrative expenses of the kind specified in sections 503(b) or 507(b)."

Some Courts have reasoned that because §726(b) does not explicitly give post-conversion administrative expenses priority over 364(c)(1) claims, the super-priority status of 364(c)(1), which does give such claims priority over all administrative expenses specified in §§ 503(b) and 507(b), must equally apply to all post-conversion administrative expenses as well. *See* In re Nat'l Litho, LLC, 2013 Westlaw 2303786, *3 (U.S. Bankr. S.D. Fla. 2013); In re Energy Coop., 55 B.R. 957, 963 n.20 (Bankr. N.D. Ill. 1985). The In re Nat'l Litho court found that to rule otherwise would be an attempt by the court to improve upon plain statutory language, which is at odds with the directive of the Supreme Court and various other higher courts. Id. at *4, *citing,* In re Bracewell, 454 F.3d 1234, 1240-1241 (11th Cir. 2006).

Another court, reaching the same result, did so for a different reason. In In re Mayco Plastics, Inc., the court held that a 364(c) claim is <u>not</u> an administrative expense, but rather is an entirely separate class of claim which is given priority over administrative expenses. *See* In re Mayco Plastics, Inc., 379 B.R. 691, 703-04 (Bankr. E.D. Mich. 2008). In that case the court noted that the language of 364(c) did not give the claim priority over "other" administrative expenses, but rather gave a 364(c) claim priority over "all administrative expenses."

Other courts have disagreed that the plain language of the statutes is clear, instead applying policy arguments, as well as general rules of statutory interpretation, to reach the conclusion that 726(b) claims take precedence over 364(c)(1) claims. *See* In re Sun Runner Marine, Inc., 134 B.R. 4 (9th Cir. B.A.P. 1991); In re Visionaire Corp., 290 B.R. 348 (Bankr. E.D. Mo. 2003), *aff'd in part and rev'd in part*, In re Visionaire Corp., 299 B.R. 530 (B.A.P. 8th Cir. 2003); In re Summit Ventures, Inc., 135 B.R. 478 (Bankr. D. Vt. 1991). Those courts noted the competing policy goals inherent in § 364, which encourages creditor financing in a Chapter 11, and § 726, which ensures a complete administration of a Chapter 7 case. See In re Summit Ventures, Inc., *supra*, 135 B.R. at 483. Ultimately those decisions held that priority should be given to the Chapter 7 administrative expenses over the 364(c) super-priority because, "[a] present need to administer a Chapter 7 case is always greater than the past, and also mooted, need of the failed Chapter 11." Id. These interpretations of § 726 ensure "that a liquidation will be carried out consistent with the expressed will of Congress by assuring payment of those who wind up the affairs of the debtor's estate." In re Sun Runner Marine, Inc., 134 B.R. at 7.

This Court finds the reasoning of the courts in In re Nat'l Litho, LLC and In re Mayco Plastics, Inc. to be the most persuasive. Despite the policy concerns raised by the In re Sun Runner Marine, Inc. and In re Summit Ventures, Inc. courts, the language of the statues is clear and must be followed as written. A post-conversion Chapter 7 trustee must take into account the existence of a pre-conversion super-priority claimant. Such a claim would be an important factor in the trustee's plan for administration of the estate. Will there be sufficient assets to first satisfy the super-priority claim before payment can be made for the fees and expenses incurred by the

trustee? The answer to this question will dictate the degree of effort the trustee may make in fulfilling his or her duties. The case before this Court clearly illustrates the problem.

Here, the only assets available to the Trustee were potential recoveries of Chapter 5 claims. Those claims belonged exclusively to the Trustee. Only he could prosecute them, which he did with some success. But, he failed to determine whether the value of the Chapter 5 claims exceeded Harborcove's super-priority claim by an amount sufficient to make his prosecution worthwhile. Such judgment is required in bankruptcy in many situations, as trustees often make risk-reward decisions based on factors such as liens, exemptions, costs of sale, or likelihood of success.

This case provides a curious outcome in that Harborcove did not have standing to pursue the Chapter 5 claims itself. It needed the Trustee if it hoped to receive any cash distribution from Chapter 5 recoveries. Yet, it does not appear that Harborcove contacted the Trustee to discuss prosecution. Instead, by misreading the Final Order, the Trustee failed to take into account the super-priority claim.

This touches upon the policy argument raised in the In re Summit Ventures, Inc. and the In re Sun Runner Marine, Inc. decisions that allowing a 364(c)(1) creditor to have priority over a Chapter 7 Trustee's post-conversion administrative expenses would disincentivise the complete administration of the Chapter 7 estate. Indeed, a trustee would have little incentive to recover the preferential and fraudulent transfers of a debtor, as the Trustee did in this case, if the trustee knew he would receive no compensation for his work. This in turn would lead to the estate having fewer assets and therefore creditors receiving less money on their claims.

Making matters worse, the Final Order, not surprisingly, excepted Chapter 5 recoveries from Harborcove's first priority security interest, causing yet another cruel twist. The language of the Final Order excluding Chapter 5 recoveries from its security interest actually benefits Harborcove. If Harborcove had held a secured position in the recoveries, the Trustee could have successfully invoked § 506(c), claiming a carve-out for reasonable, necessary costs and expenses of preserving or disposing of estate property for the benefit of Harborcove. Because the Chapter 5 recoveries secured no liens, they must be disbursed according to the priorities established by the Code, meaning that Harborcove, as a post-petition lender awarded special treatment under § 364, gets paid first (subject to the NMM carve-out).

Harborcove is not without fault or obligation here. It filed its proof of claim before the Trustee filed any Chapter 5 adversary proceedings. The proof of claim stated an amount due of $182,826.83, secured by a UCC Article 9 filing. It is undisputed that Harborcove had a claim in that amount, and the Trustee would have no reason to contest either the secured status or amount of the proof of claim.

The proof of claim additionally claimed an entitlement to priority under § 507(a)(2). This was improper, as § 507(a)(2) claims are administrative expenses allowed under § 503(b), and would have required a different form to make a claim for an administrative expense, as noted on the document itself.

The narrative attached to the proof of claim added to the confusion. To the extent it sought "turn-over or payment from proceeds of its Collateral," it's collateral did not extend to the Chapter 5 claims. To the extent that it requested, "immediate payment of the Claim Amount as an administrative expense pursuant to the Final Order," there was no money in the estate at the time that the proof of claim was filed and there was no accompanying motion or other attempt to obtain an order of the Court regarding its 364(c) claim.

As stated above, it does not appear from the record that Harborcove reached out to the Trustee at any time to discuss its claim. It had been an active participant in the Chapter 11 case, yet at no point did Harborcove reach out to the only entity with standing to recover funds to satisfy its claim. Harborcove would be entitled to nothing if the Trustee had decided not to pursue Chapter 5 claims.

These missteps lead the Court to invoke its equitable powers to conclude that the Trustee is entitled to reimbursement of those costs and expenses that were necessary to collect the Chapter 5 recoveries. Harborcove could not have enjoyed any recovery but for the efforts of the Trustee. While the Final Order entitles Harborcove to a superpriority claim, it does not entitle Harborcove to a windfall. The Trustee expended significant time in recovering an asset on behalf of Harborcove. Without the efforts of the Trustee, Harborcove would have been left with nothing from the Chapter 5 claims. It defies both logic and equity to allow such a result. The Trustee is instructed to submit an application for payment of only those fees and expenses which were reasonably necessary for the recovery of the Chapter 5 claims. Additionally, the NMM carve-out remains as to any funds remitted to Harborcove.

V.    Conclusion

For all the above reasons, the Court sustains Harborcove's objection to the Chapter 7 Trustee's Final Report of no distribution and instructs the Trustee to file an application for payment. The Court will prepare and enter a corresponding order.

Yours very truly,

/S/ *Christine M. Gravelle*
United States Bankruptcy Judge

CMG:rtp
Docket